With the lawyers who are going to argue, please approach the bench and introduce yourselves, please. Josh Vinson on behalf of the defendant, Ferro Engineering. Donald Leidenberg on behalf of the appellant plaintiff, Ellen Polta. For the appellant, you know, you're going to reserve some time for rebuttal. Yes, Your Honor, if I may reserve three minutes. Okay, fine. Let's proceed. Good morning. May it please the Court. Donald Leidenberg on behalf of the appellant plaintiff, Ellen Polta, individually and on the estate of her deceased husband, James Folta. Your Honors, by a brief way of background, the facts of this case are as follows. James Folta, as a young man, had worked for Ferro Engineering in Calumet City from the years 1966 to 1971. About a month into his time as a shipping and receiving clerk, he was instructed by Ferro to begin to walk into a caged-off area in the facility and perform destructive quality testing on the product that they were making. At the time, Ferro was making Ferro boards that contained asbestos. During those 45 minutes a day. Excuse me, we read the facts. My concern is, did you waive it by filing, did you waive your claim by filing the third amended complaint? We did not, Your Honor, and that is for three reasons. One is that the filing of the amended complaint was done during the trial before Judge Vargo was a clerical error that was filed without leave of the Court. During that, in that transcript of September 13th of 2012, there is a long discussion on pages 48 through 52 in which counsel for the remaining defendant, Clark Industrial, the Court, and myself discuss the purpose of the third amended complaint, and that was to add claims for wrongful death. And it was made very clear that there would be no removing of any claims, particularly those of Ferro Engineering, because Clark Industrial wanted to read those into the record at trial. The judge, having heard that there was not any complaint on that day in order to discuss, did not grant leave and waited for the time of that filing. During that day, there was a clerical error in which exactly what I was at the trial and made the arguments. I had said in that that I was not going to abandon those claims. My intent was made and stated on the record, which is part of the appellate record at this point. You weren't going to abandon the second amended complaint? I was not going to abandon the claims in the second amended complaint, including those against Ferro. When the clerical error occurred, I went off the record the next day and told the judge that we had made an error and that we were not ready to present any complaint to Clark  During that discussion, and it was followed up the day before on that 12th, again, there was no manifestation of any intent to abandon the claims. The second one is that there was no intent. Number three, the case law cited by the appellee in his response regarding this issue has to do with a very particular issue of prejudice to the defendant at the time of trial and amending. At the time, in all of those cases, there was a dismissal of certain claims and a continuation of the trial against that particular defendant of others and then an attempt to appeal one of those claims that did not make it into an amended complaint. Here, Ferro was not a part of that case. The parties that were involved, the court, which these cases really are concerned with to make sure that the court is on notice of the claims going forward, and Clark Industrial were all very much aware that it was plaintiffs' intent to continue those claims against Ferro Engineering. The first time that Ferro had any notice of a Third Amendment complaint was after the notice of appeal, after appellant's papers, and then in responding to appellant's papers with their response, reading the record on appeal without the transcripts, they assumed that there was a Third Amendment complaint and made that argument. There was no prejudice here to Ferro, as is discussed in that Baum-Holm case or the Foxcraft case. In fact, in the Foon's case, they did not state that the plaintiff had abandoned their claims because there was never an intention to abandon their initial claim and there was no manifestation of an intent to abandon. I would ask the court to find the same in this case because of those statements before the judge on the record regarding Ferro's claims between the leave to amend, the fact that there was no leave to amend, so technically this was not an allowable filing and a clerical error by the plaintiff. It's unclear that the trial court did not consider it a Third Amendment complaint. That's correct, Your Honor. And in fact, with the dismissal order, there is no mention of a Third Amendment complaint. It's simply that their claims against Clark Industrial were at that time dismissed. The issue in this particular case is whether plaintiff's asbestos injury that manifested itself in Mr. Folta 40 years after the last exposure at Ferro renders this outside of the provisions of the Act, outside of the purview of the Workers' Compensation Act, such that the exclusivity bar of the fourth exception in the Mirabru test applies and that plaintiff can pursue an action against Ferro in common law tort. Mr. Folta, based on the language of this statute, was unaware, this is not in running of the statute of limitations as the trial court had said, and cited the Mega case, citing that statute of limitations runs before a plaintiff understands that he has a claim and that's okay, that sometimes happens. This was before a cause of action ever arose. There was no question of whether or not he had discovered he had a claim. He had never actually had a claim prior to the running of that statute of limitations under the Act. The policy behind the Act has always been to compensate the employee, the balance of the interest between the employers and the employees, and to provide swift and certain recovery to the employee. That is stated in the Burkaw case in the second district, in the Kopass case in the fourth district, and both cite to Larson regarding workers' comp. There was no swift and certain recovery in this case, and the swift and certain recovery is why workers' comp becomes the exclusive remedy to an employee, because they give up that right for a potentially larger verdict in a common law action. Here the question is, and the statute states language that connects compensation and recoverability. We see it in the language of the statute. We see it set out in the Toothman case, which I'll discuss further. Based on the Act's language, a worker whose injuries are not recoverable under the provisions is foreclosed from making a claim to workers' compensation. He is not foreclosed, under the language of the statute, from any remedy whatsoever against his employer. The Workers' Compensation Act, Section 5A, states that no common law or statutory right to recover damages, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act. It goes on to state it gives commas and additional people who are available to an employee who is covered under the provisions of the Act, comma, to anyone wholly or partially dependent upon him, comma, to the legal representative of his estate, comma, and finally, anyone otherwise entitled to recover damages for such injury. Again, compensation and recoverability brought up in Section 5A. Mr. Falta was never entitled to recover damages under the Act. And why was he not? Not because of Section 6D, which states that after 25 years after his last exposure to asbestos, which was sometime in 1995, or three years for any disease, so 25 years for any disability which could lead to death, or three years after the last exposure for any occupational disease, he has no right to file an application. It is barred. He does not lose before the Industrial Workers' Comp Commission. He is not allowed to apply. So the statements by appellee that somehow plaintiffs' appellants' interpretation of this statute would allow anyone to sue and tort who loses before the Commission is not the case. It is the case that Mr. Falta was not able to apply to the Commission. And in that particular circumstance, because he is outside of the provisions of the Act, because he was unable to even apply for recovery, he comes under that mere re-forth exception of non-compensable under the Act. Yes, but the reason that he wasn't able to apply is because he didn't know it. Is that right? The reason he was not able to apply is because he did not have an injury or disease in that time period. He did not have a disability. The asbestos-related diseases, including mesothelioma, are not a disease that's manifested and discovered through diagnosis until decades after. It's a latency period. So the question is, if I have a latency period for the flu of a week and someone coughs on me on Monday and I get the flu on Saturday, am I sick on Monday? And the answer is no. Was Mr. Falta, did he have an injury, an in-the-line-of-duty injury in 1971? He did not. He had his injury in 2011 when he was diagnosed with his disease. By that time, the worker's compensation bar had excluded him from even applying for that injury. All right. So you're making the test, you know, and you want us to write that it's when it's discoverable because, you see, it would show up in a specific blood test. Well, to answer that, the disease would not show up in a specific blood test. It only is found at the time of diagnosis. There's no blood test beforehand that Mr. Falta could have taken in the 90s or the early 2000s or even 2010 to know that he had the disease, or even to know that he had asbestos exposure if it didn't present as an asbestosis, which it doesn't in some cases in mesothelioma. Well, how do they diagnose it if it's not with a blood test? It's a biopsy. Pardon? A biopsy of the lining of the lung. Okay. That's the only way? That's the only way. Sometimes they do a chlorosynthesis, and they're now testing the fluid if they're concerned that older persons might not be able to handle going under and having a biopsy. But the gold standard right now is a biopsy. How many years after the exposure was he diagnosed? Forty years. Yeah. 2011. All right. You know, your time has already passed, so you want to reserve some time? Yes, I do, Your Honor. Okay. Let's hear the response. Good morning. May it please the Court, Josh Vinson on behalf of the Defendant's Ferro Engineering Defendant. I wanted to start with the question of whether they waived this claim by filing the Third Amendment complaint. And I think if you look closely at the proceedings that took place on the afternoon of September 13th before Judge Varga, you will see that they were granted leave to file the Third Amendment complaint. Counsel's representation to the Court that they were not granted leave to file the Third Amendment complaint. Is there an order that provides they have leave? It's on the record. At the top of page 3. You mean it's an oral thing that the judge said you have to leave? That's correct. That's right. He said granted. But there was no order entered? There's no written order. Enter it? No. But on the record, in response to the request to file it, Judge Varga said at the top of page 48, as the transcript of proceedings of September 13th in the afternoon, granted. Go ahead and file it. Those are his exact words. Is it also on the record when counsel said he was not giving up any of the allegations in the Second Amendment? No. That's going to be very interesting when you read exactly what happened there. You see, what was taking place during this motion to eliminate period is that the defendant, Clark Insolation, wanted to put into evidence plaintiff's Second Amendment complaint because it was filled with allegations about all the wrongdoing by my client, Farrell. And they were going for a sole proximate cause defense, that Farrell was the sole proximate cause. So the Second Amendment complaint was going to be their evidence of sole proximate cause, part of the admissions that were made in that by the plaintiff. The plaintiff, on the other hand, wanted to add a survival count. That was the reason why they wanted to amend it, because they had neglected to include a survival count in their Second Amendment complaint. So what did the judge actually say? Go ahead and file it, and that's what you feel is giving them leave? He says granted. Is the word granted? Yes. Yeah. It's right in the record, top of page 48. So what happens is the defendants are objecting because they don't want the plaintiff to drop those allegations against Farrell from the Third Amendment complaint. And then the judge asks Mr. Blydenberg, well, are you going to do that? Are you going to subtract things from the complaint? And his words, and I quote, page 51 of the record, we wouldn't do that. That's what he says. We wouldn't do that. Those are Mr. Blydenberg's exact words. So he's indicating that he wouldn't withdraw any of that. That's right. And then what happens, if you look at the record at page 3731, which is where the Third Amendment complaint appears, you will see it is filed on September 13th. And your copy probably has a time stamp on it. I only have a copy of the front of that pleading, so I only have the date stamp on it. But usually the clerk's office does put a time stamp on the back. I'd be curious to see what time it was actually stamped, because I would suspect that sometime that afternoon of September 13th, after the judge said granted, and after Mr. Blydenberg represented to Judge Varga, that he was not going to take anything out of the complaint. And, of course, I suppose you lose tone when you're reading the cold record. Maybe he said, we wouldn't do that, sarcastically. Or he said it sincerely, we wouldn't do that, I don't know. But the fact is, they filed the Third Amendment complaint dropping those allegations. So I think this was a very strategic and deliberate waiver of the allegations against Farrell, because I don't think plaintiff wanted a complaint on file that the defendant, Clark Insulation, that they were going to trial against, could then introduce in evidence before the jury. So I think they deliberately took it out. I think it's a deliberate waiver. I think it was a tactical and strategic decision that was made, not a clerical error, not based on some comment that Mr. Blydenberg says he made to Judge Varga off the record the next day, which I don't even see a transcript. I don't think of September 14th. I don't remember right now. But there doesn't appear to be any off-the-record discussion about this, and I don't know how he can rely upon an off-the-record discussion to make his case. Fauch doesn't permit that. So this is a very clear case of waiver under the Foxcroft rule. They deliberately dropped it to thwart the defendant's desire to use the Second Delegations against my client as evidence for their sole proximate cause defense. And it all comes up in the context of their discussion of the 1204 instruction that the defendants wanted the judge to give during pretrial proceedings. So I think that it fits actually like a glove. This is not a forfeiture case. This is a knowing and deliberate waiver that occurred here. And Mr. Blydenberg talks about no prejudice to us, but I think actually the issue in this case, I don't think the Bonhomme or the Foxcroft decisions really turn on that. This is the case where I think the prejudice is the court system. I mean, I think that was a misrepresentation of Judge Varga as to what they intended to do, and I think it was a little sneaky, frankly. And I don't think the court should countenance it. I think the court should find that this was waived. If we go to the merits of this claim, Mr. Blydenberg brings up the Mega versus Holy Cross Hospital case. That was a case I did in the Supreme Court 30 years ago. That case deals precisely with this very same issue. It's kind of funny. I guess if you practice long enough, the cases that you did all come back full circle. But in Mega versus Holy Cross Hospital, it was an identical situation. In that case, they used to treat babies with x-rays for enlarged thyroids, and they discovered decades later that this caused thyroid cancer. So just as with Mr. Folt's situation, where he was exposed to asbestos from 1966 to 1970, this was about the same time period in Mega. I think it was the late 50s when they were doing this to babies, and then decades later they discovered it caused thyroid cancer, just as 40 years later Mr. Blydenberg's client developed mesothelioma. So we went to the Supreme Court on that issue of that very question. Is it possible for someone to have their claim barred before they even discover it? And that's exactly what the Mega case stands for. Anderson versus Wagner as well. The Supreme Court held in Mega that, yes, it is conceivable, it is possible for a claim to become barred before it is discovered. That is the nature of statutes of repose. That is the purpose that they serve. We're talking about the exclusivity provisions of the Workers' Compensation Act and the four exceptions and the fourth one that a plaintiff is relying on. So I don't know that you can analogize the case you argued so eloquently. I was just responding to that. I'd be happy to talk about the compensability problem. Well, that's the issue. Does it come under that fourth prong? What you find with the compensability is that it really comes up, I think, you define that as whether it falls within the coverage of the Act. That's what they're talking about there. Compensability refers to coverage of the Act. And the context in which that arose is if you turn back the clock, in the early part of the 20th century, claims for emotional shock, emotional distress, were not recognized in the common law. And then what you had is that series of cases starting with Pathfinder, followed by Collier's, followed by Mirabre, where people tried to make workers' compensation claims based on emotional distress-type injuries. And the employers defended those cases, saying that these were not compensable under the Workers' Comp Act because they were not injuries recognized as actionable in common law. And the Supreme Court held that doesn't matter. It is a line-of-duty injury, suffered, arising out of and in the course of the employment, it is therefore compensable. And that is the context in which that term, compensable, is used. Because if you look at the four exceptions, not accidental, we know accidental is a key part of compensability. Does not arise out of or in the course of, that's the language of Section 5. And so, clearly, if it doesn't arise out of or in the course of the employment, it's not covered by the Act. Non-compensable, again, if it's not compensable under the Act, which is different than it being time-barred under the Act. I mean, a claim can be compensable under the Act and become time-barred, as we see exactly in this case. But non-compensability, that phrase arose in that context. And there are other examples. I mean, another example of a claim that would be non-accidental and arise out of it in the course of the employment and yet be non-compensable under the Act, within the meaning of that fourth exception, would be an employment discrimination claim. I mean, employment discrimination claims would be clearly an example of something that occurs in a line of duty. That's where those types of wrongs are typically perpetrated. So they do arise out of. They occur while you're working. They are usually causally connected to your employment. They can be accidental from the standpoint of an employer's policy that happens to have an indirect impact on a particular class of people, but they're non-compensable because the legislature has taken them outside the scope of the Workers' Compensation Act. So there are. I mean, non-compensable has a meaning, but it is not defined by whether the claim is barred by the statute of limitations or statute of repose. No, but that doesn't mean that it couldn't be interpreted that way. Well, there's no case that says that. No, and this is a case of first impression. One way or the other. Well, if you look at all the cases that talk about the question of compensability, as I discussed, Pathfinder, Mirabre, Colliers, even Toothman, they don't turn on the fact that someone was unable to recover benefits on a claim that otherwise fell within the coverage of the act. That's why I think plaintiff is ascribing a meaning to that word, compensable, that is not supported by the cases. I think what the cases are saying is, does it fall within the coverage of the act? That's the context in which it arose. It arose in that context of can you provide compensation, can you provide coverage under the act for emotional distress-type injuries? The court found yes. Well, let me ask you this. Is there really any question in this case that 40 years after he worked at the plant that it was determined that he's suffering from mesothelioma? Is there any question? No. It's a motion to dismiss. We have to accept that as true. All right. And based on that, is there any question that it really couldn't have ever been discerned any sooner than that 40-year time frame? Again, I think we have to accept the allegations as true, and they have alleged that it was only discovered at that point. Is there any question that the statute of repose bars any compensation because of the time frame here? There's no question that there is a 25-year period of repose. I don't agree with Mr. Blydenberg that it forbids the plaintiff from filing an application for benefits. And why do you disagree? I think the statute of limitations and repose are affirmative defenses that an employer would have to raise. That's why, to some extent, I almost feel like the entire argument is hypothetical in the sense that that's why he raises that question of the 25-year repose period being unconstitutional. Well, if it were unconstitutional, that wouldn't get him a common law action against his employer. That would only get him a worker's comp claim. So are you suggesting that he should have proceeded with the worker's comp claim first had it been then the affirmative defenses? Well, that's normally how it would go. Yeah. Even though you're dealing with a 40-year time frame. Yes. Let's go one further question. Sure. Because of that statute of repose and the statute of limitations, isn't it correct to say that he can't be compensated as a general rule under the Worker's Comp Act? Yes, that is true. Now, that's not to say he can't be compensated. He sued 14 other defendants, many of whom settled in this case. But under the Act, he cannot recover any compensation. Because his action is time barred. Not because it is a claim that is non-compensable. It was a compensable claim. Yeah, but now you're reading something into the words, the injury is not compensable under the Act. Well, compensability is a term that the Supreme Court has defined in Sostrom v. Sproul and in Unger v. Continental as being synonymous with a line-of-duty injury. That's what compensable means. Sostrom v. Sproul. They were not interpreting this clause. Which clause are you referring to in Section 5? The injury is not compensable under the Act. Well, that's not a clause from the statute. You're talking about a phrase from a case. No, we're talking about the exceptions. But those are phrases from a case. That's not language from the Act. Right. But each one of them has to have some meaning. I don't think that you're lumping them all together. They're descriptive. If you follow them down, it says not accidental. Right. Because Section 5 says an accidental injury is covered. Section 5 says compensation is available for injuries that arise out of and in the course of. Those are exceptions 2 and 3 that they're describing. They're not prescribing. They're describing. And noncompensable arises out of that line of cases dealing with the question of emotional distress injuries, that people took the position and fell outside the coverage of the injury. Right. But those exceptions don't include this language about where there's emotional suffering. That's not included. There's no suggestion if you just take your reading of it. There's nothing that even refers to that under this fourth exception. The injury was not compensable. It says nothing about emotional suffering. The three cases that they come out of does. Right. Colliers, Pathfinder. Yes. Right. Yes. But, you know, there's no language that suggests that that's included under the umbrella. So it is sort of an umbrella that has to be interpreted. And that's what we're asked to be interpreting today. And I'm offering you as the interpretation based on those cases. Yes. That when they use that term compensable to refer to claims that fall outside the coverage of the act. The examples being, as I said, emotional distress being one, employment discrimination cases being another. There could certainly be other categories of claims that people could make against their employers that arose from injuries that occurred in the line of duty that the legislature has determined are outside the scope and the coverage of this act. And that you can pursue your, have given you permission to sue your employer for it. Like under the Human Rights Act. Like the Illinois Human Rights Act. Like Title VII. Four years at jury after I just discovered it. Well, unfortunately, the legislature has made a determination. That's true in medical malpractice cases, too. Medical malpractice cases, you know, you only have four years after the act or omission causing the injury in which to sue. So if they left a sponge in you and you didn't discover it until five years later, yeah, it's barred. I mean, this is a judgment call. And I think it's an interesting judgment call because in this context, our legislature has determined that you get three years to file a comp claim, but 25 years to file a mesothelioma or an Occupational Diseases Act claim. That's kind of a distinguishing feature. You know, they're relying heavily on that Pennsylvania case that came down. Different statute. But if you look at what happened in Pennsylvania, they only had five years regardless of the type of claim. And I think the court, for that reason, found that these types of claims that accrue much later fell outside the scope of the statute. But in Illinois, the legislature determined 25 years. And that was a balance that was struck because they knew that mesothelioma claims can sometimes take, as he says in his brief, 30 or maybe even 40 years. So where do you draw the line? I mean, that's the legislature's job. They said three years for regular. They said 25 for occupational diseases. Unfortunately, this man, it was 40 years. So, unfortunately, he doesn't. That happens with statutes of limitation in Illinois. All right. You're running out of time. We would ask that you affirm the judgment for law. Thank you. Okay. Two-minute rebuttal. Thank you, Your Honor. Very quickly. I think you better answer the question about whether or not you were granted leave to file that third amendment complaint. Yes, Your Honor. Page 50 of September 12th. The counsel for defendants said, we don't have the complaint. But the allegation should be the same because we're relying on the second amendment complaint. The court questioned, is that the one I'm allowing today? They go on and they said, no, we were just talking about it the last day or two. Maybe we should get it beforehand. The court said, maybe you shouldn't be saying anything right now. And then they go on and he says, so it's going to stay the same? To which I responded, yes, it is, Your Honor. I wouldn't do that, Your Honor. The statement then goes on page 52. So, in their second amendment complaint and in the pleading that they filed, they talk about the facts of this case and, in particular, that Ferro had knowledge as early as 1966 about the health risks posed by asbestos and Ferro did not provide that information to its employees, including Mr. Folta, that, in fact, Ferro withheld that information from their employees, including Mr. Folta. So, we plan to offer into evidence the second amendment complaint and then the third amendment complaint, which should be identical, except for the filing additions to it, not subtractions. The court, got it, except for the injuries and damages, okay. They go on at the end of that day on page 73. We have to get the amended complaint. The court, yes, we do. There was no oral order. There was no written order. Granting leave to amend that complaint. The second amended complaint is what held in that case. What does page 48 say? Sure. Page 50 at the top, okay. Let's take it from the top. Well, if you read beforehand, page 49 of the court. So, nothing new. Okay, go ahead. So, that's done. Because there was, council said, we assume all the disclosures will be the same. There's not a new disclosure to be made because it's not going to be a new pleading. We assume that's been disclosed. Court, that's true. And the defendant agreed to the filing of the third amended complaint. The court said, so nothing new. So, are you amending the complaint? No objection. Granted. File it. Okay. Now it's filed. Mr. Houston, we don't have it. And then I read through all of that stuff. It was not a granting of leave. There was a constant conversation going on here between five pages of in-camera discussions with the court. Is the third amended complaint file stamped? Not on the appeal on record. All right. Well, anyway, so there's a contest here about whether it was file stamped or not. We'll look at the record. We'll have to interpret that. But the third amended complaint doesn't have the allegations that the second amended complaint had as to Farrell. Is that right? No, it doesn't, Your Honor. It just states against Clark Industrial Insulation. All right. Just very quickly, the compensability versus coverage, I believe TUI in the Pennsylvania Supreme Court addresses that immediately. Compensability and coverage are the same thing in this issue. Toothman says it, too. If recoverability and compensability aren't the same thing, then Mirabri is meaningless. And the fourth exception is meaningless. This court, in the Soucy case in 2002, said the same exact thing. If an accidental injury is compensable merely because it arose out of and in the course of employment, then the fourth prong of Mirabri is superfluous. That's what Farrell is attempting to argue here. The unconstitutionality arguments are simply about the court's interpretation of the act. Nowhere in the act does the court say we bar. And by the way, that's section 6D of the act, which actually states you cannot file. Filing of the application is barred. That's in the language of the statute. But nowhere does it go outside and say you have no remedy. You're barred from everything else. It's the trial court's interpretation of that. And barring any remedy, making the remedy illusory for Mr. Fultus simply because he got the disease 40 years later. That makes the reading unconstitutional. And what fixes those constitutional arguments? It's Mirabri. It's the fourth exception to Mirabri. Thank you, Your Honor. Well, you guys gave us a very interesting case, and we appreciate your briefs and your arguments, and we'll take it under advisement. Thank you.